UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Roman Z. Guziewicz,
      Claimant

      v.                                    Case No. 10-cv-310-SM
                                             Opinion No. 2011 DNH 010
Michael J. Astrue, Commissioner
Social Security Administration,
      Respondent


**O R D E R**

Pursuant to 42 U.S.C. § 405(g), Roman Z. Guziewicz moves to reverse the Commissioner's decision denying his application for Social Security disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423.  The Commissioner, in turn, moves for an order affirming his decision.  For the reasons given below, the matter is remanded to the Administrative Law Judge ("ALJ") for further proceedings consistent with this opinion.


**Standard of Review**

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  The findings of the Commissioner of Social Security as to any fact, if

> supported by substantial evidence, shall be conclusive
> . . .

42 U.S.C. § 405(g). However, the court "must uphold a denial of social security disability benefits unless 'the [Commissioner] has committed a legal or factual error in evaluating a particular claim.' " Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Commissioner's findings of fact be supported by substantial evidence, "[t]he substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts." Alexandrou v. Sullivan, 764 F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730 (2d Cir. 1966)). In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Finally, when determining whether a decision of the Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole." Irlanda Ortiz

v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (quoting

Rodriquez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).[1]


**Background**

The parties have submitted a Joint Statement of Material Facts (document no. 10).  That statement is part of the court's record and will be summarized here, rather than repeated in full.  Other facts of record will be discussed only as necessary.

Guziewicz injured himself on September 30, 2007, while lifting a ladder from a truck.  That injury resulted in both back and leg pain.  Shortly after he was injured, Guziewicz was diagnosed with "degenerative disc disease in his lumbar spine that included focal right paracentral disc extrusion extending cephalad at L3-L4, mild left paracentral disc protrusion at L4-L5, and no evidence of recurrent or residual disc protrusion at L5-S1."  (Jt. Statement, at 2.)  Guziewicz has received various forms of treatment for his condition, including medication (Tylenol, anti-inflammatories, Percoset, Neurontin, ibuprofen,

---

[1] "It is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts." Irlanda Ortiz, 955 F.2d at 769 (citations omitted).  Moreover, the court "must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988).

acetaminophen, Oxycontin, Tramadol), two epidural steroid injections, a right L3-L4 discectomy (performed on March 5, 2008), outpatient physical therapy, pool therapy, and use of a TENS device.

In a New Hampshire Workers Compensation Medical Form dated January 10, 2008, Dr. Rowland Hazard opined that Guziewicz had no work capacity. (Tr. at 235.)  Another such form, dated January 7, 2010, but bearing an illegible signature, reaches the same conclusion. (Tr. at 232.))  On May 27, 2008, a non-physician medical consultant completed a Residual Functional Capacity Assessment in which she determined that Guziewicz was able to: (1) lift twenty pounds occasionally and ten pounds frequently; (2) stand and walk (with normal breaks) for a total of about six hours in an eight-hour workday; (3) sit (with normal breaks) for a total of about six hours in an eight-hour workday; and (4) push and/or pull without limitation. (Tr. at 128.)  The medical consultant also determined that Guziewicz could occasionally climb (ramps/stairs and ladder/rope/scaffolds), balance, stoop, kneel, crouch, and crawl. (Tr. at 129.)  On July 22, 2008, physical therapist Eric Hartman completed a functional assessment

in which he determined that Guziewicz had a "Current Capacity / Physical Demand Level" of "Light."[2]  (Tr. at 193.)

At the time he was injured, Guziewicz was working as a cable television installer.  He has not returned to that job.  In September of 2008, he attempted to work as a volunteer teacher's aid, for four hours a day, five days a week.  He says he had to give up that position because he was unable to tolerate the amount of standing and walking that was required, could not function properly in the classroom while medicated, and could not obtain the credentials he needed for the job because his pain prevented him from sitting through the necessary classes.

At his hearing before the ALJ, Guziewicz testified that in a typical day, he helps his wife get their three children ready for school, drives them to school, and picks them up each day, making two trips to take them, and two trips to pick them up.  He also testified that when he brings the youngest child home, he prepares his lunch, and when be brings the two older children

---

[2] By way of explanation, Hartman's functional assessment form explains that "[l]ight work as defined by the U.S. Department of Employment and Training Administration requires lifting no more than 20 lbs. on an occasional basis or up to 10 lbws on a more frequent basis.  Typical energy requirement – 2.5 METS."  (Tr. at 193.)

home, he prepares them a snack.  He also prepares dinner for the family, and helps put the children to bed.

Guziewicz also testified that between the activities described above, he spends several blocks of time each day reclining, to ease his pain.  Typically, he lies down for: (1) an hour or more between the time he wakes up and takes his medications and the time he helps get the children ready for school; (2) an hour and a half to two hours after taking the children to school; (3) an hour and a half in the early afternoon; and (4) an hour and a half after dinner.  In addition, his pain makes it difficult for him to find a comfortable position in which to sleep, and he gets between four and five hours sleep per night, either on the floor or on the sofa in the guest room.  Regarding his need to lie down frequently during the day, Guziewicz testified that when he is unable to do so, his pain increases, he takes more pain medication, and it takes two to four days for the pain to decrease to tolerable level.

After the hearing, the ALJ issued a decision which included the following findings:

> 3.  The claimant has the following severe impairments: low back injury status post an L4-5 discectomy, right knee arthritis and situational depression (20 CFR 404.1520(c)).

6

> . . . .
>
> 4.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).
>
> . . . .
>
> 5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work allowing for an opportunity to sit and stand alternatively every 30 minutes.  The claimant would be restricted from all climbing of ladders and would be able to only occasionally crawl, kneel and climb stairs.  He would need to avoid exposure to unprotected heights and dangerous machinery, but would be capable of understanding, remembering and carrying out moderately complex four and five step tasks despite his pain and occasional depressive symptoms.
>
> . . . .
>
> 6.   The claimant is unable to perform any past relevant work (20 CFR 404.1625).
>
> . . . .
>
> 10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

(Tr. at 9, 10, 11, 14, 15.)  Based on the foregoing findings, the

ALJ determined that Guziewicz had "not been under a disability,

as defined in the Social Security Act, from September 30, 2007

through the date of this decision."  (Tr. at 16.)

**Discussion**

According to Guziewicz, the ALJ's decision should be reversed, and the case remanded, because the ALJ erred in assessing his credibility and, consequently, his residual functional capacity ("RFC"). The Commissioner disagrees.

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability. 42 U.S.C. §§ 423(a)(1)(A)-(D). The only question in this case is whether Guziewicz is under a disability.

For the purpose of determining eligibility for disability insurance benefits,

> [t]he term "disability" means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). Moreover,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or

>    whether a specific job vacancy exists for him, or
>    whether he would be hired if he applied for work.  For
>    purposes of the preceding sentence (with respect to any
>    individual), "work which exists in the national
>    economy" means work which exists in significant numbers
>    either in the region where such individual lives or in
>    several regions of the country.

42 U.S.C. § 423(d)(2)(A).

In order to determine whether a claimant is disabled for the purpose of determining eligibility for disability insurance benefits, an ALJ is required to employ a five-step process.  See 20 U.S.C. §§ 404.1520.

>    The steps are: 1) if the [claimant] is engaged in
>    substantial gainful work activity, the application is
>    denied; 2) if the [claimant] does not have, or has not
>    had within the relevant time period, a severe
>    impairment or combination of impairments, the
>    application is denied; 3) if the impairment meets the
>    conditions for one of the "listed" impairments in the
>    Social Security regulations, then the application is
>    granted; 4) if the [claimant's] "residual functional
>    capacity" is such that he or she can still perform past
>    relevant work, then the application is denied; 5) if
>    the [claimant], given his or her residual functional
>    capacity, education, work experience, and age, is
>    unable to do any other work, the application is
>    granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920, which outlines the same five-step process as the one prescribed in 20 C.F.R. § 1520).

The claimant bears the burden of proving that he is disabled. See Bowen v. Yuckert, 482 U.S. 137, 146 (1987). He must do so by a preponderance of the evidence. See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11) (D. Mass. 1982)). Finally,

> In assessing a disability claim, the [Commissioner] considers objective and subjective factors, including: (1) objective medical facts; (2) plaintiff's subjective claims of pain and disability as supported by the testimony of the plaintiff or other witness; and (3) the plaintiff's educational background, age, and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690 F.2d 5, 6 (1st Cir. 1982)).

Guziewicz argues that the ALJ erroneously found his claims of disabling pain not to be credible, and erroneously found that he had the residual functional capacity to perform sedentary work, because, in making both determinations, the ALJ ignored pertinent evidence in the record and failed to fairly consider the evidence he did assess. The commissioner counters that both the ALJ's credibility determination and his RFC assessment are supported by substantial evidence.

According to Social Security Ruling ("SSR") 96-7p, "an individual's statement(s) about his or her symptoms[3] is not in itself enough to establish the existence of a physical or mental impairment or that the individual is disabled," 1996 WL 374186, at *2.  When "symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness," id., are alleged, SSR 96-7p prescribes a two-step evaluation process:

> \* First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s) – i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques – that could reasonably be expected to produce the individual's pain or other symptoms. . . .  If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.
>
> \* Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.  For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding

---

[3] "A symptom is an individual's own description of his or her physical or mental impairment(s)."  SSR 96-7p, 1996 WL 374186, at *2.

>on the credibility of the individual's statements based on a consideration of the entire case record.

Id. In addition:

>When additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements.  In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:
>
>>1. The individual's daily activities;
>>
>>2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>>
>>3. Factors that precipitate and aggravate the symptoms;
>>
>>4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>>
>>5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>>
>>6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>>
>>7. Any other factors concerning the individual's functional limitations and restrictions due to

>     pain or other symptoms.

Id. at *3.

SSR 96-7p outlines a specific staged inquiry that consists of the following questions, in the following order: (1) does the claimant have an underlying impairment that could produce his or her symptoms?; (2) if so, are the claimant's statements about his or her symptoms substantiated by objective medical evidence?; and (3) if not, are the claimant's statements about those symptoms credible?  The ALJ's decision in this case appears to proceed through the inquiry out of order, and to draw unsupported conclusions in response to both the second and third questions.

On page seven of his decision, the Administrative Law Judge states:

>     After considering the evidence of record, the
>     undersigned finds that the claimant's medically
>     determinable impairments could reasonably be expected
>     to produce the alleged symptoms, but that the
>     claimant's statements concerning the intensity,
>     persistence and limiting effects of these symptoms are
>     not entirely credible.

(Tr. at 13.)  Then, on the next page of his decision, after discussing a number of the relevant factors (such as daily activities, pain medication, treatment other than medication, and measures other than treatment), the ALJ states:

13

> Thus, while the claimant was honest and matter-of-fact in his presentation and has done what he can to maximize his treatment and re-engage in work (brief work as a teacher's aide), the undersigned, nevertheless, is obligated to find him not disabled under the meaning of the Social Security Act secondary to a lack of objective medical evidence confirming the symptoms of severe pain alleged by the claimant.

(Tr. at 14.)

To properly conduct the inquiry outlined in SSR 96-7p, after answering the first question in the affirmative, an ALJ must next determine whether the claimant's statements about pain are substantiated by objective medical evidence. As <u>Baker v. Astrue</u> explains: "If <u>after evaluating the objective findings</u>, the ALJ determines that the claimant's reports of symptoms are significantly greater than what could be reasonably anticipated from the objective evidence, the ALJ must then consider other relevant information." Civil Action No. 08-11812-RGS, 2010 WL 3191452, at *8 (D. Mass. Aug. 11, 2010) (emphasis added). In other words, <u>before</u> "weigh[ing] the credibility of a claimant's statements about pain . . . [t]he ALJ must <u>first find a lack of support in objective medical evidence</u> for the allegations of pain." <u>Caille v. Comm'r of Soc. Sec.</u>, Civil No. 09-1305, 2010 WL 1424725, at *3 (D.P.R. Apr. 6, 2010) (emphasis added).

But here, the ALJ appears to have determined Guziewicz's statements about pain to not be entirely credible <u>before</u> he determined whether there was objective medical evidence to support those statements.  Then, although it is not entirely clear, it appears that the ALJ relied on the lack of objective medical evidence as a basis for finding Guziewicz to be not entirely credible – notwithstanding the fact that the ALJ found him to be "honest and matter-of-fact" in his presentation.  If, indeed, the ALJ used the lack of objective medical evidence as his basis for finding Guziewicz to be not entirely credible, rather than treating such a finding as compelling him to conduct a credibility assessment, that constitutes legal error on the ALJ's part.

Beyond that, the ALJ's conclusion regarding the lack of objective medical evidence is legally inadequate.  While the ALJ cites a "lack of objective medical evidence confirming the symptoms of severe pain alleged by the claimant" (Tr. at 14), that statement is little more than a bare conclusion -- the decision does not disclose an evaluation of the objective medical findings, <u>see</u> <u>Baker</u>, 2010 WL 3191452, at *8, or indicate how Guziewicz's "reports of symptoms are significantly greater than what could be reasonably anticipated from the objective evidence," <u>id.</u>

15

Rather, based on a careful reading of the decision, it seems that the "lack of objective medical evidence" on which the ALJ relies is his finding that "there is no indication in the record that [Guziewicz's] treating physicians are aware of [his need to lie down during the day to relieve his pain]." (Tr. at 13.) But, as the Commissioner points out, "the mere memorialization of a claimant's subjective complaints in a medical report does not elevate those statements to a medical opinion." Morris v. Barnhart, 78 Fed. App'x 820, 824 (3d Cir. 2003) (citing Craig v. Chater, 76 F.3d 585, 590 n.2 (4th Cir. 1996)). Conversely, then, whatever else it may be, the absence of a report by Guziewicz to his physicians that he lies down frequently during the day to relieve his pain, is not equivalent to the absence of objective medical evidence of pain. Thus, as in Santiago v. Astrue, Civil Action No. 09-30006-KPN, 2009 WL 3517611 (D. Mass. Oct. 14, 2009), which resulted in a remand, the ALJ in this case "did not discuss . . . how Plaintiff's statements were inconsistent with the objective medical evidence," id. at *8 (emphasis added). The ALJ's decision does describe some of the objective medical evidence, but not in a discussion that compares the medical evidence to Guziewicz's symptoms. Absent any meaningful comparative evaluation of the objective medical evidence and Guziewicz's allegations of disabling pain, the ALJ's decision

does not contain an adequate determination that Guziewicz's symptoms were not substantiated by objective medical evidence.

Even if the ALJ's decision did adequately establish that Guziewicz's symptoms were not substantiated by objective medical evidence, the ALJ's credibility determination falls short of the mark. While it falls to the Commissioner to determine issues of credibility and resolve conflicts in the evidence, see Irlanda Ortiz, 955 F.2d at 769, and, as the Commissioner correctly points out, it is not the proper role of the court to reweigh the evidence, still, a credibility determination must be supported by substantial evidence in the record. See Frustaglia v. Sec'y of HHS, 829 F.3d 192, 195 (1st Cir. 1987) (giving deference to ALJ's credibility determination when supported by substantial evidence). The credibility determination in this case is not so supported.

The ALJ acknowledged Guziewicz's testimony that he had to lie down during the day to relieve his pain and that if he does not do so, he has to take more medication, and is incapacitated for several days thereafter. In the section of the decision in which he explained that he did not fully credit Guziewicz's testimony, the ALJ noted that: (1) since his surgery in 2008, Guziewicz "continues to report significant pain" (Tr. at 13); (2)

since his surgery, Guziewicz "has received a range of conservative treatment modalities including epidural steroid injections, physical therapy, pool therapy[,] pain medication (Neurontin and Oxycontin) and recently a TENS unit" (id.); (3) "[t]he epidurals did not provide any measurable improvement, while the other treatments have provide only partial relief" (id.); (4) Guziewicz declined to participate in an intensive rehabilitation program due to his child care duties; and (5) he "credibly reports some side effects from his pain medications" (id.).  Then the ALJ stated: "Although [Guziewicz] testified that he must lie down during the day to relieve his pain, there is no indication in the record that his treating physicians are aware of this."  (Tr. at 13.)

Nowhere does the ALJ state why he found Guziewicz's statements about his pain to be not entirely credible.[4]  The closest thing to an explanation appears to be the ALJ's observation that Guziewicz's treating physicians were not aware that he has to lie down frequently to relieve his pain.  That is not substantial evidence sufficient to undermine the credibility of Guziewicz's statements about the intensity, persistence and limiting effects of his pain.  Whether or not Guziewicz told his

---

[4] Moreover, that conclusion is somewhat difficult to square with the ALJ's determination that "the claimant was honest and matter-of-fact in his presentation" at the hearing.

physicians about the specific steps he took to alleviate pain, he did tell the ALJ. That he did not tell his physicians (or, more correctly, that such disclosure is not in the medical record) says little about whether Guziewicz actually takes those steps, and says even less about whether he is suffering from disabling pain. The record discloses that Guziewicz's physicians are well aware of his pain,[5] and have prescribed any number of medications and other treatments to alleviate it, most of which Guziewicz has tried. To be sure, the ALJ did mention, directly or indirectly, many of the factors relevant to making a properly supported credibility determination. But, in the final analysis, his decision not to fully credit Guziewicz's statements about pain is not supported by substantial evidence in the record.

In sum, the ALJ's assessment of Guziewicz's credibility, and his determination of Guziewicz's residual functional capacity (which rests on the credibility assessment), are fatally flawed by the failure to properly address the allegations of disabling

---

[5] Given the ALJ's concern with Guziewicz's failure to tell his doctors about his need to lie down frequently – the significance of which the Commissioner does not explain – it is important to bear in mind that the symptom at issue is the degree of Guziewicz's pain, not what he does to relieve it. (See Resp't's Mem. of Law (document no. 9-1), at 4 ("The ALJ further noted that though [Guziewicz] testified that he needed to lie down during the day, there was no evidence in the record that his doctors were aware of this symptom."). Pain is a symptom; lying down to relieve pain is not.

pain within the framework established in SSR 96-7p.  On that basis, the decision is not supported by substantial evidence, and must be remanded.

## Conclusion

For the reasons given, Guziewicz's motion to reverse the Commissioner's decision (document no. 8) is granted to the extent that the case is remanded for a new administrative determination. Necessarily, then, the Commissioner's motion to affirm his decision (document no. 9) is denied.  Pursuant to sentence four of 42 U.S.C. § 405(g), this matter is remanded to the ALJ for further proceedings.  The Clerk of the Court shall enter judgement in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

January 14, 2011

cc: Raymond J. Kelly, Esq.
    T. David Plourde, Esq.